Good morning, Your Honors. Ari L. Stern on behalf of Citibank. Addressing the question the court had for us in the minute order issued last week, we do believe it's a good idea to certify the question regarding the CC&Rs and the mortgage savings provisions in the CC&Rs to the Nevada Supreme Court. We, of course, argued in our briefing, and we continue to argue today, that the district court erred in determining that Riverwalk's super priority foreclosure cannot be invalidated based on those mortgage savings provisions. And we believe that the district court's error likely derived in part from the Nevada Supreme Court's statements that aren't as clear as the district court believed. So we start with a kind of a first principle that I think all sides would agree on, and that is a Nevada trial court has the ability to set aside a foreclosure sale for fraud, oppression, or unfairness. And I think there's also agreement based on footnote 11 in the Shadow Canyon opinion that in HOA's representation that the sale will not affect the mortgage that is, in some cases, the word used in the footnote is may constitute fraud, oppression, and unfairness. What do we do with all of the unpublished Nevada Supreme Court cases? Have we lost Mr. Hastings? Sorry, Your Honor. I'm here. I believe I was supposed to have stopped my video when I was not arguing. I'm sorry. Just mute your microphone, please. Okay. So what do we do with, there's like a half a dozen Nevada Supreme Court cases unpublished, seemingly disavowing the footnote in Shadow Canyon. What do we do about those? Why shouldn't we rely on those? For a couple of reasons. The first one is those cases, of course, are unpublished. They do not rely on established Nevada law. And I think the reason they're unpublished is they tend to be two or three page affirmances of Nevada trial court orders. Counsel, I'd like to follow up on Judge Ikuda's question. Harborview and the other unpublished cases draw a distinction between misrepresentations about the specific lien that is in question in the Nevada Supreme Court. And the other issue is our job when we're looking at state law is only to predict how the Nevada Supreme Court or the appropriate state court would rule. And even if there is not a published Supreme Court decision. And so why wouldn't in view of the fact that this same distinction with the specific lien, a misrepresentation versus a more generic problem, why wouldn't we expect the Supreme Court to follow that distinction in a published decision if they've done it unpublished many times? I think the individual circumstances of the cases that the Nevada Supreme Court considered in issuing those affirmances become relevant. We understand of course the distinction and our position to the Nevada Supreme Court, should this court certify, would be to address why the manner in which the misrepresentation is made, whether it's made publicly in a reported document as a covenant versus a privately sent letter, should not make a difference. And we do have at least... I don't think it's public versus private. I think the distinction is between a generic statement and a statement specific to the lien at issue saying your lien is, there's no problem here. Well there is a problem here, but it's, it isn't really public versus private. It's specificity versus non-specificity. And could you address why that would make any difference? Because the Supreme Court, the Nevada Supreme Court said the issue is whether it chills bidding or has an effect on sale. Is there any reason why a published statement in the CCNR would have lesser effect on chilling bidding or sale than a specific letter sent to, could you address that as well? Yes, addressing both points. Starting with the specificity versus the general issue, I think the record in the cases that the Supreme Court has addressed where the letter was sent specifically, even those instances are, we would argue, pretty generic because in those cases the records establish that the HOA for closing trustee, as a matter of course, sent essentially what was a form letter to accompany each notice of the foreclosure or the sale. And so we point the court's attention to the J.P. Morgan case, this is the same Florentine versus Avenue Trust versus J.P. Morgan, 427 Pacific 3rd, 125, where the Nevada Supreme Court actually squinted in favor of having some more meaningful role for the CCNRs as part of the manner in which the miscommunication as to the effect of the foreclosure sale may be made. With respect to the, so to finish on that point, while we understand that the body, the weight of the unpublished cases suggests that the Supreme Court would answer the question by confirming that the CCNRs are essentially void on this point, we do think that there's enough variance in the records of those cases as well as the contrary outcome in the J.P. Morgan case to justify getting some guidance through the certification, particularly when we consider under the Nevada Supreme Court's jurisprudence on certified questions, one of the prongs, barring from California law, is whether there's an unresolved issue of state law. And we believe that when you combine the individual circumstances of cases with the lack of a published opinion, that bad prong, which is I think a little bit what we're focusing on here, is met. With respect to chilled bidding, I think the issue here goes in two directions. It's certainly, I think in this context, a little more on point whether we're dealing with a private versus a broader effect on the market rather than in an individually sent letter that the public doesn't see. Of course, chilled bidding, you would expect other members of the public who typically show up to bid on these things, on these sales, would respond more to a CCNR provision because that's just more readily available information. So its presence in the CCNRs, we think, just based on the market dynamic, would be more meaningful. But I would also point out that we think that this report erred in concluding that you have to have a low price in order to set aside a sale based on fraud, oppression, and unfairness. The Supreme Court has been clear that you cannot set aside a sale just based on the insufficiency of the price without at least some modicum of fraud, oppression, or unfairness that has a plausible relationship. But we think that the opposite is not true. If a court can find fraud, oppression, I should say if a court does find fraud, oppression, or unfairness without an unreasonably low price, the absence of that price, the absence of the chilled bidding, is not a conditioned precedent for the court inequity setting aside the sale. And so our view is answering the second point is that the CCNR is probably the method of but the district court erred in finding that you have to in all cases show that there was an unreasonably low price. If we can show fraud, oppression, and unfairness without getting to that low price, that's sufficient to set aside the sale. What was the percentage of the value versus the sale price here? In this case it was in the statement, which we understand the Supreme Court did not adopt, but we nevertheless suggest that that's kind of the informal demarcation point. So we would be below that in this case. I would like to reserve my remaining 40 seconds if that's okay. You may, thank you. Thank you. We'll hear from Mr. Hastings. Good morning, your honors. My name is Ryan Hastings and I represent the Riverwalk Homeowners Association. With regard to answering the panel's question, the association's position is that no, the panel should not certify the question for the following reasons. The association would submit that there actually is controlling precedent in this case, and it comes from the very case that was cited in the court's order, the Shadow Canyon case. In clarifying previous decisions dealing with whether the court can set aside HOA foreclosure sales, the Supreme Court of Nevada held in the Shadow Canyon case the following, quote, thus we continue to endorse Golden's approach to evaluate the validity of foreclosure sales. Mere inadequacy of price is not in itself sufficient to set aside the foreclosure sale, but it should be considered together, and this is the part I'd really like to focus in on and I think often gets misquoted. So again, going back to the quotation, it should be considered together with any alleged irregularities in the sales process to determine whether the sale was affected by fraud, unfairness, or impression. The reason I think that that language is so important is that not only is it binding, but it speaks to the court's questions of Mr. Stern earlier regarding generic versus specific. I would suggest that the way the association argues that point is different. Here we are dealing with whether or not the alleged irregularity is part of the sales process, and it needs to be if it's going to be something that rises to the level of fraud, unfairness, and oppression such that it could set aside the sale. And so what that means is this court should be asking itself, are CC&R provisions drafted and recorded years before any foreclosure sale on an association lien? Is it conceivable that that CC&R provision be considered an irregularity in the sales process? And the association would submit to your honors that that is not a reasonable interpretation or application of the facts in this case and the court's ruling in Shadow Canyon. So even in the event that this court's not convinced that the Supreme Court intended to limit the type of irregularities that could rise to the fraud, unfairness, or oppression to irregularities in the sales process, meaning something that the association did by virtue of conducting its sale, I still think that the question shouldn't be certified because there are facts and circumstances here for the court to simply affirm the district court's order. And the next point I would like to make comes from the CC&Rs themselves. The only ability the bank would have to convince someone that the CC&Rs were unfair were to suggest that the only provision within the CC&Rs are the ones that it focuses on. We know that that's not the case. The bank's briefing and argument completely ignores other provisions of the CC&Rs and Nevada law which demonstrate that no one could read those CC&Rs and reasonably believe that their lien was going to not be, or that the deed was not to be affected by the CC&Rs. Which dictate that this, that NRS chapter 116 not only trumps any provisions of the CC&Rs which might be inconsistent with the law, but that they quote, in the event that any provision of the declaration is found to be irreconcilably conflict with or violate any such applicable provision of NRS 116, such offending declaration provision shall be automatically deemed modified or severed here from. So in other words. It's not enforceable. I mean that either the statement in the letter nor the statement in the CC&Rs is enforceable and the Nevada Supreme Court has been absolutely clear on that. But nevertheless, the Nevada Supreme Court says an HOA's representation that the foreclosure sale will not extinguish the first deed of trust could constitute the slight irregularity that along with a low sales price could be sufficient to satisfy the foreclosure sale. So the question is whether the representation in the CC&Rs, which was one of the two items in Dizon, which is referenced by, in Pat Flint and Shadow Grove, is enough. So I don't think the subsequent statements that no buyer would think that it was enforceable, that the representation was enforceable is necessarily on point because that seems to be the established rule in Nevada. But they nevertheless said there was an equitable issue. Well, and I agree with that, Your Honor, to a certain extent. But I would say that the kinds of representations that are being discussed and being given as examples in the footnotes don't match up with the idea that that representation could show up in a CC&R. Those representations are always letters drafted as a part of the process of the association's foreclosure sale. Perhaps not on the day of the sale in terms of how that sale is conducted that day. But every example of the Supreme Court even talking about a representation comes in the form of a letter. Okay. So is that a difference? That makes a difference, though. Because what the Nevada Supreme Court seems to be concerned about is its effect on chilling the bidding or chilling the sale. Correct. So your opposing counsel says, well, the representation in the CC&R is widely available and can be reviewed by potential bidders, whereas the individual letter goes to the lien holder. The effect on bidding would be less. So please address that. Well, I think that as an initial matter, there was no evidence in our case. There wasn't even an argument in our case put forth before the district court to suggest that there was chilled or that the CC&R even caused any kind of chilled bidding here. So we don't even have a record where that was even attempted to be established, let alone done in a manner that would be convincing and would warrant this court's certifying the question or not affirming the case. Oh, so what sort of evidence are you suggesting should be introduced? Well, I don't know, Your Honor. I don't believe that there could be any evidence that would demonstrate that a CC&R provision chilled bidding. Well, and a letter. Why would a letter chill bidding? Well, I don't necessarily think a letter would chill bidding, either. I don't think that the bank can. I have thought about that question, Your Honor, and I literally cannot come up with an example of something an association has ever done in any of these cases that actually resulted in a bill. And so if neither a representation in a letter nor a representation in the CC&Rs would chill bidding, do we read the Nevada Supreme Court's statement and HOA's representation that the foreclosure sale will not extinguish the first deed of trust to be one of those irregularities and may rise to the level of fraud and fairness or oppression? Do either mean we don't worry about it? Well, I think what they're referring to there is if at the sale some announcement is made that the bank's deed of trust would not be extinguished, and a court subsequently ignored that and found that the sale was extinguished by virtue of the lien. What do we make of the fact that they cite EZone, which had a CC&R representation and a letter? So the two things you say have no effect on sale. They certainly didn't have an announcement of the foreclosure sale. What do we do about that? Yeah, so the court cited to Zizix, and as you well know, Your Honor, Zizix, when it went back before the Judge Mahan, who initially made that decision, he did make the distinction that in his mind there was sufficient, it did rise levels, the representation in the letter that was sent did rise to the level of fraud, oppression, and fairness. We don't have those facts here. So even if Your Honors are not convinced that the irregularity would have to be in the sales process, such that the CC&R provisions don't really ever make sense because of the footnote that was referenced, I think that the conclusion has to be here, because we don't have that evidence of any second representation made via a letter, that we're just simply not there in order to be able to justifiably certify the case. So if I understand you correctly, you're saying the misrepresentation or the representation has to be in a letter, but the letter has no effect on the sales process or the bidding. So I'm not sure why we make that distinction. No, I don't believe, look, I don't believe that even the letter would constitute an irregularity in the sales process. Right, so how do we make a distinction? Why would we make a distinction between the letters and the CC&Rs if neither of them have any effect whatsoever? Well, maybe we shouldn't. If ultimately the Nevada Supreme Court is saying there has to be that connection, then I don't think it really matters, the discussion about whether the irregularity rises or comes up in the CC&Rs as opposed to a letter. Counsel, does it matter whether we think the distinction makes sense between a generic and a specific if the Nevada Supreme Court has made that distinction? Don't we just accept that as Nevada law, whether we think it makes sense or not? I mean, in my question to opposing counsel, I posited that the unpublished decisions do make that distinction. Do you agree that they do make it, even if you think it makes no sense? I do. Well, we can read the letters. We know the unpublished opinions. We know they make the distinction. But why aren't they published, though? They're sort of in conflict with the published opinion. That's my concern. Well, yes. Well, I don't know that I necessarily read it that way, but I do agree with what was previously submitted to Mr. Stern by your honors, which was, look, we're in the position to predict how the Nevada Supreme Court would rule on this. And with the recent unpublished opinions, yes, they're unpublished, but we can't sit here and say that those don't give us a very clear understanding as to how the Nevada Supreme Court would rule on this issue if we even were to certify it. And so for those, I think that's an additional reason that the case shouldn't be certified and the district court's decision should be affirmed. Thank you, counsel. You've exceeded your time, and I believe there is some rebuttal time remaining. We used a lot of questions, so we'll let you go for a little bit. Thank you, your honor. I think the discussion we just heard regarding footnote 11 and the distinction where Mr. Hastings ended up arguing that even a private letter has no effect, just kind of, in our view, illustrates further why certification is proper. There is, in how these unpublished decisions have come out, there are unresolved issues. And while we understand the point that the distinction seems to have mattered in the unpublished decisions, and I've read them as well as the court has and understand that, it really hasn't been discussed in any analytical way, I don't think, why the distinction matters in one respect versus another. And to be candid, I'm not sure that the parties to those cases even briefed it. And so I think it would be useful for determining what I think this argument has shown to be an unresolved issue of Nevada law for the court to certify these questions. Or the question. I would like to read briefly from the SFR investments decision, and this is the 2014 decision discussing the mortgage savings provision, where the court in this conclusion writes as follows. The mortgage savings clause does not affect NRS 116.31162's application in this case. So the court in SFR investments never voided the mortgage savings provision, but then right after that, they cite another case where in a parenthetical, they note that CC&R clauses can be voided. And so even though the SFR investments decision itself was, in our view, somewhat ambiguous, actually not even somewhat, was ambiguous on that point, that ambiguity percolates down to what we're discussing today. We think to get the decision correct, we ask that the court do certify the questions. It meets the three prongs that the Nevada Supreme Court set forth in the case on acceptance certified cases, which of course we did not brief in our briefing, because we didn't ask for certification. But for the court's reference, that's Volvo Cars of North America versus Ricci, which is 137 Pacific 3rd 1161, which adopts the California standard. And on those grounds, we ask for certification. Thank you. Happy to answer any other questions. Thank you. The case just argued is submitted. We appreciate the arguments of both of you.
judges: Tashima, Graber, Ikuta